IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 22–CR–30111–SPM |
| DAMOND WILEY, JR., | |
| Defendant. | |

## MEMORANDUM AND ORDER

**McGlynn, District Judge:**

Before the Court is defendant Damond Wiley, Jr.'s Motion to Suppress Evidence and Statements (Doc. 28). Wiley raises three arguments within his motion: (1) the troopers lacked probable cause to stop defendant; (2) the troopers lacked probable cause to search the vehicle; and (3) the troopers lacked probable cause to arrest defendant (*Id.*). The government filed its response setting forth numerous theories that rebut each of defendant's arguments (Doc. 32). The government also provided exhibits in support of its position, including still photographs of the vehicle searched, dash camera footage, and the body camera footage of both Troopers Renner and Schlau (Docs. 32, 33)

Although defendant requested an evidentiary hearing, one is not necessary in this case. Indeed, while his version of events differs from that of the government, Wiley has not introduced any evidence that contradicts the photographs, audio, or video recordings submitted by the government. In

order to obtain an evidentiary hearing, Wiley bears the burden of making a prima facie case of illegality. *United States v. Randal*, 966 F.2d 1209, 1212 (7th Cir. 1992). Furthermore, courts are required to hold an evidentiary hearing only when "a substantial claim is presented" and "there are disputed issues of fact that will affect the outcome of the motion" *United States v. Curlin,* 638 F.3d 562, 564 (7th Cir. 2011). For the reasons set forth below, the Defendant's motion to suppress is denied.

## PROCEDURAL AND FACTUAL HISTORY

On September 24, 2022, the government filed a one-count Complaint against Damond Wiley, Jr., charging him with Possession of a Firearm by a Felon, in violation of 18 U.S.C. §922(g)(1) (Doc. 1). The charge was predicated upon a traffic stop on a blue BMW that occurred on September 22, 2022 wherein a black Smith and Wesson .40 caliber semi-automatic pistol, model M&P 40, SN MRJ5545, containing 15 rounds of ammunition was located on the driver's seat. On October 18, 2022, the Grand Jury indicted Wiley with the same offense, Possession of Firearm by a Felon, pursuant to 18 U.S.C. §922(g)(1) (Doc. 18).

On December 21, 2022, Wiley filed this motion (Doc. 28). Following an extension of time, the government filed its response in opposition on January 20, 2023 (Doc. 32). On that same day, the government also manually filed 3 audio-video exhibits that included the dash camera footage, as well as the body camera footage of Troopers Renner and Schlau (Doc. 33). This Court has read the pleadings and has viewed all of the footage provided.

**LAW AND ARGUMENT**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In order to "compel respect for the constitutional guaranty," the Supreme Court of the United States created the exclusionary rule. *Davis v. United States*, 564 U.S. 229, 236 (2011) (citing *Elkins v. United States*, 364 U.S. 206, 217 (1960)). When applicable, that rule forbids the use of evidence obtained by police officers in violation of the Fourth Amendment. *Davis*, 564 U.S. at 231-32.

This Court will analyze Wiley's motion chronologically, beginning with the traffic stop, moving on to the search of the vehicle, addressing the statements made before arrest, and concluding with the arrest of Wiley, to determine whether any of evidence and/or statements should be suppressed.

**1. Traffic Stop**

Wiley first argues that the troopers lacked probable cause to conduct a traffic stop (Doc. 28). In support of his position, he refers to the dash camera that does not depict any traffic violations; however, not everything the troopers see can be seen on a dash camera. Furthermore, a traffic violation is not even required for the stop to be upheld.

The Supreme Court has made clear that an investigatory stop, which constitutes only a limited intrusion into an individual's privacy, is reasonable, and therefore permissible, "if the officer making the stop is 'able to point to specific and articulable facts' that give rise to a reasonable suspicion of criminal activity." *United States v. Tilmon,* 19 F.3d 1221, 1224 (7th Cir.1994) (quoting *Terry*

*v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "[R]easonable suspicion requires more than a hunch but less than probable cause and considerably less than preponderance of the evidence." *Gentry v. Sevier,* 597 F.3d 838, 845 (7th Cir.2010).

"When determining whether an officer had reasonable suspicion, courts examine the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect." *United States v. Lawshea,* 461 F.3d 857, 859 (7th Cir.2006). This assessment requires that the court engage in an objective analysis that is "based on common-sensical judgments and inferences about human behavior." *United States v. Baskin,* 401 F.3d 788, 791 (7th Cir. 2005).

A traffic stop is considered reasonable where the police believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). The Seventh Circuit has extended this rationale to even "minor traffic offenses" and has also found an officer's reasonable belief that a driver committed a traffic violation as sufficient grounds for a traffic stop without offending the Constitution. *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005). It does not matter whether any such violation even occurred so long as there was an objective basis for the reasonable belief. *United States v. Cashman,* 216 F.3d 582, 586 (7t Cir. 2000).

On September 22, 2022, Troopers Renner ("Renner") and Schlau ("Schlau") with the Illinois State Police, (collectively referred to as "troopers"), were on patrol in East St. Louis, Illinois when they observed a blue BMW with dark tinted windows, which is a violation of the Illinois motor vehicle code, *to wit*: 625 ILCS

5/12-503. The troopers then followed the vehicle onto 22nd Street and then Ridge Avenue, before seeing the vehicle "park" in front of 439 N.21st Street[1].

Turning to the task at hand, we ask ourselves two questions to determine whether the traffic stop was lawful: first, what facts were known to the troopers at the time they stopped the vehicle? And second, based on those facts, would a reasonable officer conclude that Wiley had committed a violation of the law? This Court answers both of these questions in the affirmative.

In this case, the troopers had more than ample grounds to conduct a traffic stop. They first observed the dark tinted windows, and then while following the BMW, they also claimed Wiley committed the additional traffic violations of speeding, failure to stop at sign or signal, and failure to signal when turning. Although Wiley points out that these infractions were not seen in the dash camera; it is irrelevant to the outcome so long as the officers had a reasonable belief that an infraction was committed. *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000). Wiley also "parked" the car in a questionable position, which is just one more objective factor to support the officers' beliefs. In light of the forgoing, a reasonable officer would conclude that Wiley had committed a violation of the law. Accordingly, this Court finds that the stop was reasonable and that probable cause existed for the stop.

---

[1] Although Wiley claims he parked the car on a private driveway where he previously lived, the government included two photographs of the BMW "parked" in front of 439 N.21st Street. This Court is constrained to note that the body of the vehicle blocked the sidewalk and the front wheels of the vehicle were in the roadway, both of which are violations of 625 ILCS 5/11-1303. Additionally, the property is in a ramshackle state and does not have roof.

### 2. Search of the Vehicle

After Wiley "parked" the BMW, he exited and was repeatedly told "to get in the car"[2] (Doc. 33). Instead, Wiley disobeyed the troopers and ran away. Both Troopers initially pursued Wiley; however, Renner returned to the BMW, opened the driver's door and a firearm is seen, in plain view on both the dash camera and Renner's body camera, sitting on the driver's seat. Wiley's second argument is that the search of the vehicle lacked probable cause (Doc. 28).

### a. Abandonment

The Government contends that Wiley abandoned the BMW when he exited it and left it behind to avoid being apprehended by the police, and this Court concurs. Indeed, the Seventh Circuit has held on multiple occasions that a driver relinquishes any privacy interest when he flees a vehicle. *See United States v. Vasquez*, 635 F.3d 889, 894 (7th Cir. 2011) (questioning how a defendant "could argue with a straight face that he maintained an expectation of privacy in [the vehicle] after he ditched it and bolted off on the run"); *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005) (noting that when a driver flees from police, that "is pretty good evidence that he's abandoned the car—that he doesn't want to be associated with it and therefore isn't going to reclaim it").

The Fourth Amendment protects a defendant from unreasonable searches in places where the defendant has a legitimate expectation of privacy. *United States v. Sawyer*, 929 F.3d 497, 499 (7th Cir. 2019). The Fourth Amendment does not apply to abandoned property because one cannot have a reasonable expectation of

---

[2] The dash footage and the body camera footage of both troopers corroborate that Wiley was told at least three times to get in his car, but that he looked at the troopers and then ran from the scene.

privacy in an item he or she has abandoned. *Abel v. United States,* 362 U.S. 217, 241 (1960); *United States v. Pitts,* 322 F.3d 449, 455-56 (7th Cir. 2003).

Abandonment turns upon an objective test of "the external manifestations of the defendant's intent as judged by a reasonable person possessing the same knowledge available to the government agents involved in the search." *Id.* It is irrelevant if the defendant harbors a desire to later reclaim an item. *United States v. Basinski,* 226 F.3d 829, 836 (7th Cir. 2000). In other words, would Wiley's voluntary words and/or actions lead a reasonable person in the searching officer's position to believe that Wiley relinquished his property interests in the BMW? *See Pitts*, 322 F.3d at 456 (citing *Basinski*, 226 F.3d at 836).

In determining whether an object has been abandoned, courts must consider the totality of the circumstances, paying "particular attention to explicit denials of ownership and to any physical relinquishment of the property." *Basinski*, 226 F.3d at 837. This Court has considered the totality of the circumstances and finds no evidence that prevents a reasonable person from concluding that the BMW was abandoned by Wiley. The photos demonstrate that Wiley "parked" the vehicle in front of a vacant lot and what appeared to be a run-down property located at 439 N. 21st Street (Doc. 32). The car was blocking the sidewalk and was partially in the street. Wiley then exited the car and, against the troopers directives, he "ran away" (Doc. 28). The dash camera footage as well as the body camera footage of both Renner and Schlau corroborate what happened. Wiley parked the car, got out, and fled on foot, even after being told at least three (3) times to stay in the car (Doc. 33). Wiley can even be heard disclaiming that the vehicle belonged to him. Because

Wiley had no reasonable expectation of privacy in the vehicle, the Fourth Amendment is not implicated and the search was lawful.

### b. Inevitable Discovery

Assuming arguendo that the BMW was not abandoned, the "search" was not in violation of the Fourth Amendment. First, the troopers had reasonable suspicion to believe that Wiley was engaged in criminal activity. He evaded police, and once stopped, he fled on foot in East St. Louis, a "high crime" area, all of which can be considered for reasonable suspicion. *See Illinois v. Wardlow,* 528 U.S. 119 (2000).

Applying *Terry* principles to the automobile, the Supreme Court held that a search of the passenger compartment of an automobile, so long as it is limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983); *see Terry v. Ohio,* 392 U.S. 1, 27 (1968) ([T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.").

In this case, Renner initially pursued the defendant with Schlau, but the dash camera and body camera footage show him returning to the vehicle. The dash camera also shows that the darkly tinted windows make it very hard to see into the vehicle and determine whether anyone else was in the car. It was impossible to know if the defendant would return to the vehicle. Renner opened the door and

observed the firearm, in plain sight, on the driver's seat. As heard in his body camera and the dash camera footage, all of this was before Renner learned that the fleeing suspect, the defendant, was in custody. This Court cannot say that a reasonably prudent man in similar circumstances would not be concerned about his safety or that of others.

Although the Fourth Amendment generally requires the police to secure a warrant before conducting a search, the Supreme Court first recognized an exception to the warrant requirement almost 100 years ago. *Carroll v. United States,* 267 U.S. 132, 153 (1925). Under the modern-day exception*,* a warrantless search of a vehicle can be conducted so long as there is probable cause to believe it contains contraband or evidence of illegal activity. *Maryland v. Dyson,* 527 U.S. 465, 466-67 (1999) (per curiam). In other words, if there was probable cause to search a vehicle "a search is not unreasonable if based on facts that would justify the issuance of a warrant, *even though a warrant has not been actually obtained.*" *United States v. Ross,* 456 U.S. 798, 809 (1982)(emphasis added).

Probable cause exists when based on the known facts and circumstances, a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched. *United States v. Charles*, 801 F.3d 855, 860 (7th Cir. 2015). For the search to be proper, there only has to be a "fair probability" that contraband or evidence of a crime would be found in the car. *Id.*

Once Wiley was in custody, he is heard saying that he "is not to have police contact", that he is "on papers" (probation), and that he is "on bond" (Doc. 33). The troopers can then be heard verifying that Wiley is on probation for a gun offense. At

this point, the troopers have probable cause to search the BMW without a warrant based upon the totality of the circumstances – the evasive driving, fleeing the scene, being on probation for a gun offense, and being on bond for another offense.

Finally, the vehicle was towed from the scene consistent with ISP protocol and an inventory search was conducted. Inventory searches constitute a well-recognized exception to the warrant requirement and are reasonable under the Fourth Amendment. *See South Dakota v. Opperman,* 428 U.S. 364, 376, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). An inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures. *United States v. Jackson,* 189 F.3d 502, 508–09 (7th Cir.1999). Both of the scenarios were present.

In any event, had a warrant been obtained or an inventory search conducted, the gun would inevitably have been located. Even an illegally seized item need not be suppressed if officers would have inevitably discovered it through lawful means. *United States v. Stotler,* 591 F.3d 935, 940 (7th Cir.2010).

### 3. Spontaneous Statements

Troopers Renner and Schlau were wearing body cameras that captured and recorded both the audio and video of the events that transpired after the stop of Wiley on September 22, 2022. Wiley briefly claims that these statements should be suppressed as "fruits of the poisonous tree" but does not go any further with this argument (Doc. 28).

While handcuffed at the scene, the troopers can be heard on at least three (3) occasions telling Wiley to "Shut up". Wiley's own mother can also be heard telling him to shut up and stop talking while someone else mentions that he is not supposed to have police contact. Spectators also made contradictory statements that Wiley just bought the car or that the car did not even belong to him. Once the troopers ran Wiley's name, they were also heard verifying that Wiley was on probation for a gun offense. Those are not the statements at issue.

Wiley himself stated he was "not supposed to have police contact" because "he was on papers" and was "on bond". He also mentioned that the car was not his, but again, there was no specification as to what statements he claimed were suspect.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that the Fifth Amendment requires that, before police officers interrogate a suspect in custody, they must warn the suspect of his right to remain silent and right to an attorney. This *Miranda* warning is not required for all interactions between suspects and officers - only when the suspect is "in custody" and subject to "interrogation." *United States v. Yusuff*, 96 F.3d 982, 987 (7th Cir. 1996); *United States v. Patterson*, 826 F.3d 450, 454 (7th Cir. 2016). "[T]he essential element of a custodial interrogation is coercion." *United States v. Salyers*, 160 F.3d 1152, 1159 (7th Cir. 1998) (quotation omitted).

In this case, although Wiley was in custody, the statements he made were voluntary and not the result of custodial interrogation. Therefore, this Court denies the motion as to the statements.

### 4. Seizure

As set forth *infra*, the stop of Wiley was neither unreasonable nor without probable cause; however, Wiley argues that the seizure of his person lacked probable cause (Doc. 28). Immediately after the stop, Wiley fled on foot. He was then tased and taken into custody.

Probable cause exists if a reasonable officer would believe "that the suspect has committed, is committing, or is about to commit an offense," based on the "facts and circumstances within the officer's knowledge." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979). "Probable cause is a fluid concept based on common-sense interpretations of reasonable police officers as to the totality of the circumstances at the time of arrest." *United States v. Breit*, 429 F.3d 725, 728 (7th Cir.2005).

In this case, the troopers were aware of several facts that would allow a reasonable officer to believe Wiley committed an offense. He had committed at least one traffic violation, which justified the stop. Wiley's decision to run from the officers and disobeying commands to stay in the vehicle was another violation of the law, i.e. resisting or obstructing a peace officer in violation of 720 ILCS 5/31-1. Then, a firearm was located in plain view in the abandoned vehicle. In light of the forgoing, there was no Fourth Amendment violation as the officers had probable cause to seize Wiley after his flight from the stop.

### CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendant Damond Wiley, Jr's Motion to Suppress in its entirety.

**IT IS SO ORDERED.**

**DATED: February 9, 2023**

                                                /s/ Stephen P. McGlynn
                                                **STEPHEN P. McGLYNN**
                                                **U.S. District Judge**